# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| LEROY HALL MCCOY, <br><br> Petitioner <br><br> v. <br><br> CALVIN JOHNSON,[1] *et al.*, <br><br> Respondents | Case No.: 2:21-cv-01966-APG-EJY <br><br> **Order Denying Petition, Denying Certificate of Appealability, and Closing Case** |

In his *pro se* 28 U.S.C. § 2254 petition for a writ of habeas corpus Leroy Hall Mccoy challenges his convictions, including for attempted murder and kidnapping. ECF No. 6. The remaining claim lacks merit so I deny the petition, deny a certificate of appealability, and close the case.

**I.  Background**

In 2018, a jury convicted McCoy of first-degree kidnapping (count 3), attempted murder with use of a deadly weapon (count 4), and battery with use of a deadly weapon resulting in substantial bodily harm constituting domestic violence (count 5). Exhibit 41.[2] The jury acquitted him of invasion of the home while in possession of a deadly weapon and burglary while in possession of a deadly weapon. *Id*. He was found guilty of attacking and stabbing his ex-girlfriend numerous times with two different knives. *See* Exh. 34 at 34-36. The state district

---

[1] According to the state corrections department's inmate locator page, McCoy is incarcerated at High Desert State Prison. The department's website reflects that Jeremy Bean is the warden for that facility. At the end of this order, the court directs the Clerk to substitute Jeremy Bean for prior respondent Calvin Johnson, under, *inter alia*, Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Exhibits referenced in this order are exhibits to the respondents' motion to dismiss, ECF No. 28, and are found at ECF Nos. 17-24, 27.

court sentenced him as follows: count 3 – five years to life; count 4 – 96 to 240 months, consecutive to count 3; and count 5 – 48 to 180 months, concurrent to count 4. Exh. 43. Judgment of conviction was entered on April 11, 2018. Exh. 44. The Nevada Court of Appeals affirmed McCoy's convictions in October 2019 and affirmed the denial of his state postconviction petition in October 2021. Exhs. 79, 116. McCoy dispatched his federal habeas petition for filing that same month. ECF No. 6.

One claim remains for my consideration: in ground 1(c) McCoy argues that his trial counsel was ineffective for failing to object to the admission of text messages and the victim's medical records. ECF No. 6 at 3.

## II.    Trial Testimony

I summarize the trial evidence and related state court record material and proceedings as a backdrop to consideration of the issues presented in the case.[3] Ashley Ferch testified that she had been in a relationship with McCoy for ten years. Exh. 34 at 41-85. When Ferch ended the relationship, she went to stay with McCoy's sister, Joslyn Hall and Hall's five children. She had been there about a week and had been texting McCoy that she didn't want to be together anymore. Around 9:00 a.m. on December 23, 2017, McCoy knocked on the door. No one would let him in, so he knocked the door off its hinges. He was holding a rock a little smaller than the size of a football. He didn't see Ferch right away because she was behind the door. McCoy's teenage nephew B'Kari Hall knocked the rock out of his hand. McCoy pulled what

---

[3] I make no credibility or factual findings regarding the truth or falsity of evidence or statements of fact in the state court record. I summarize them solely as background to the issues presented in this case, and I do not summarize all such material. No assertion of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by me. Any absence of mention of a specific piece of evidence or category of evidence does not signify I overlooked it in considering McCoy's claims.

looked like a steak knife out of his hoodie pocket, stabbed Ferch in the nose, and sliced the side of her face. Ferch tried to run out the front door, but McCoy stabbed her in the back. The knife had broken; he punched her in the jaw and dragged her to the kitchen. He grabbed a large bread knife, held it over her head, and told her he was going to kill her. Ferch was holding on to the knife by the blade, trying to fight McCoy for it, and begging him not to kill her. Hall yelled at him to stop stabbing Ferch, and all the kids were screaming. While Hall was on the phone with 911 McCoy left. Ferch described her finger as "hanging off." *Id*. at 57.

Joslyn Hall testified at trial that she did not remember much about the incident. Exh. 34 at 133-150. She said she was asleep when her son B'Kari Hall started banging on her door. She said she opened the door, and Ferch rushed in. Hall said she rushed out and took all of her kids outside because Ferch and McCoy were fighting. She testified that she never saw a knife and did not remember making the 911 call because she was intoxicated. She said she didn't remember telling the 911 dispatcher that her brother was stabbing his girlfriend. Hall said that it was B'Kari who called 911 on speakerphone. The prosecution asked her to read from texts she later sent to McCoy, where she told him he should turn himself in for "cutting" Ferch, and where he replied that he wouldn't stop until Ferch was dead. *Id*. at 146-148.

B'Kari, who was 16 at the time of the incident, testified. Exh. 34 at 167-179. He said that he never saw McCoy at the apartment that day and that he did not remember knocking a rock out of his hand. He also said he remembered that someone called 911 but did not remember if he was the one who called or anything about the call. He said he saw some blood on the floor of the apartment. He said his mother was not at the apartment at all that day, and he did not knock on his mother's door to get her to leave the apartment. The court asked B'Kari if he saw any kind of fight between McCoy and Ferch that day and he responded: "I plead the Fifth." *Id*. at 175-176.

On re-direct the prosecutor asked B'Kari if it surprised him that his mother had testified that she and B'Kari were both there that day and that B'Kari called 911 while his mother was sitting with him in the car outside. To both questions he responded: "I don't know." *Id*. at 177-178.

Las Vegas Metropolitan Police Detective Eric Mancao testified. Exh. 34 at 151-167. He said that when he did an initial walk-through of the scene with a crime scene analyst the door was damaged where the dead bolt latches into the frame, and he saw a knife blade without the handle on the floor. *Id*. at 156.

### III. Legal Standards & Analysis

#### a. AEDPA Standard of Review

The Antiterrorism and Effective Death Penalty Act (AEDPA) sets forth the standard of review generally applicable in habeas corpus cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254 "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362,

405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous.  The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

To the extent that the petitioner challenges the state court's factual findings, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *See, e.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004).  This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*.  The governing standard is not satisfied by a mere showing that the state court finding was "clearly erroneous." *Lambert*, 393 F.3d at 973.  Rather, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision.  Rather, we

5

must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### b. Ineffective Assistance of Counsel

Ineffective assistance of counsel (IAC) claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*. Counsel's performance is "measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted).

6

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*.

Federal review of a state supreme court's decision on a claim of ineffective assistance of counsel is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The reviewing court must "take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* (internal citations omitted).

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*. at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 124. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. Federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id*. at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

////

7

**Ground 1(c)**

McCoy insists that his trial counsel was ineffective for failing to object to the admission of Exhibit 75—the texts between McCoy and Hall—and the admission of the victim's medical records. ECF No. 6 at 3. He argues that the texts were admitted under the "pretense" that Hall was texting McCoy. He also argues that the medical records were admitted but he was unable to cross-examine the doctor about whether the injuries could have been self-inflicted.

The Nevada Court of Appeals held that McCoy failed to demonstrate deficiency or prejudice:

> McCoy claimed that counsel should have objected to the admission of text messages between McCoy and another person. McCoy claimed that the evidence was "false because it was admitted under the "pretense" that Joslyn H. was the one texting him. McCoy further claimed that the State never proved the messages were between Joslyn and McCoy and a detective testified that Joslyn was not on the scene when the detective received the evidence. The district court properly admitted the evidence because Joslyn testified that she recognized the text messages and that they were texts between her and McCoy. *See* NRS 52.015(1). To the extent McCoy challenged Joslyn's credibility, it was the jury's role to determine her credibility and the amount of weight to give her testimony in light of conflicting testimony. *See Bolden v. State*, 97 Nev, 71, 73, 624 P.2d 20, 20 (1981). Accordingly, McCoy failed to demonstrate counsel's performance fell below an objective standard of reasonableness or a reasonable probability of a different outcome had counsel objected to the admission of the evidence on the grounds offered by McCoy. Therefore, we conclude the district court did not err by denying this claim.
>
> McCoy claimed that counsel should have objected to the admission of the text messages on Confrontation Clause grounds because the evidence was given to the police by someone other than Joslyn and the State failed to establish that person was unavailable to testify. Because Joslyn provided the foundation for the exhibit and was subject to cross-examination, any Confrontation Clause objection would have been futile. *See Chavez v. State*, 125 Nev. 328, 338, 213 P.3d 476, 483 ("[T]he opportunity to cross-examine is the focal point of the right to confront."). Accordingly, McCoy failed to demonstrate counsel's performance fell below an objective standard of reasonableness or a reasonable probability of a different outcome had counsel objected to the admission of the evidence on Confrontation Clause grounds. Therefore, we conclude the district court did not err by denying this claim.

> McCoy claimed that counsel should have objected to the admission of the victim's medical records on the grounds that McCoy should have been allowed to confront the attending doctor about the victim's injuries and whether they were self-inflicted. McCoy did not allege that the records contained accusatory statements or prejudicial items. Thus, objecting to their admission on the grounds offered by McCoy would have been futile. *See* NRS 48.025; NRS 51.115; *Flores v. State*, 121 Nev. 706, 718 n.33, 120 P.3d 1170, 1178 n.33 (2005). To the extent McCoy claimed counsel was ineffective for not calling the doctor as a witness, McCoy did not allege what the doctor's testimony would have been or how it would have affected the outcome of the proceedings. Accordingly, McCoy failed to demonstrate counsel's performance fell below an objective standard of reasonableness or a reasonable probability of a different outcome had counsel objected to admission of the medical records. Therefore, we conclude the district court did not err by denying this claim. . . .
>
> Moreover, this court has previously held there was overwhelming evidence of McCoy's guilt. *See McCoy v. State*, Docket No. 76447-COA (Order of Affirmance, October 31, 2019).

Exh. 116 at 3-4, 6.

The trial judge questioned Joslyn Hall before admitting Exhibit 75, which were photos of text messages between two people. Exh. 34 at 144-145. The judge asked Hall if the phone number being texted to was McCoy's. Hall said she thought so. The judge told her to take a look at the whole message then asked: "Do you recognize that?" Hall answered yes. The judge asked: "And is that a text from you to him, or him to you?" And Hall answered yes. *Id*. at 145. The judge then admitted Exhibit 75. The State had Hall read the texts:

> Hall: You need to turn yourself in. You was wrong for cutting Ashley.
>
> McCoy: No. She was wrong for leaving me in the cold and being closed door with Ronnie she did – she did played my heart. They're going to kill me before I turn myself in, trust that. I'm not stopping until she's dead. I'll turn myself in.

*Id*. at 146-148. Hall said that the person McCoy was referring to in the text was Ferch. *Id*. at 148.

McCoy's claim that counsel should have objected because the texts were admitted under the pretense that they were texts between he and his sister is meritless. Hall testified that she recognized the texts and that they were between her and McCoy. Any objection would have been futile, and counsel cannot be ineffective for failing to lodge a futile objection. *Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir.2000).

Turning to the medical records, Ferch testified about the University Medical Center records from her treatment there that day. Exh. 34 at 77-79. Reading from the records, she testified that the records indicated that she was treated for lacerations—including of facia and tendons—on her nose (down to the bone) and back (back wall of thoracic without penetration into thoracic cavity), and for lacerations and a severed tendon in her hand. She did not testify about any statements she made to medical staff. Nothing in the records she read pertained to how she sustained the injuries. McCoy's claim that counsel should have objected to the admission of these records is also meritless. Nothing in the records pointed to McCoy as the perpetrator. McCoy doesn't explain how the doctor's testimony could have been helpful to the defense. The court also notes that it seems unlikely (albeit not impossible) that a stab wound to the upper back could be self-inflicted.

McCoy has not shown that the Nevada Court of Appeal's decision on federal ground 1(c) was contrary to, or involved an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). I therefore deny federal habeas relief on ground 1(c) and, therefore, deny the petition.

/ / /

/ / / /

### IV. Certificate of Appealability

This is a final order adverse to McCoy. As such, Rule 11 of the Rules Governing Section 2254 Cases requires me to issue or deny a certificate of appealability (COA). Accordingly, I have *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*. None of my rulings meets the *Slack* standard so I decline to issue a COA for my resolution of McCoy's claims.

I THEREFORE ORDER that the petition **[ECF No. 6] is DENIED**.

I FURTHER ORDER that a certificate of appealability will not issue.

The Clerk of Court is directed to substitute Jeremy Bean for the respondent Calvin Johnson and to enter judgment accordingly and close this case.

DATED this 17th day of August, 2025.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE